UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HAI LONG DU,

                              Plaintiff,

                v.

PARTY PERFECT RENTALS LLC, DEMARI R
KESLER,

                            Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

23-CV-88

(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Hai Long Du commenced this action against defendants Party Perfect Rentals LLC and Demari R. Kesler (collectively, "Defendants") alleging that Kesler, while acting in the scope of his employment for Party Perfect, negligently operated a commercial truck and caused the parties' trucks to collide. Dkt. No. 1-1 ¶¶ 41, 49. Du seeks to recover damages for his alleged serious injuries pursuant to New York State's No-Fault Insurance Law § 5102(d). *Id.* ¶ 49.

Currently pending before the Court is Defendants' request for a "missing witness" charge to the jury following Plaintiff's decision *not* to call Dr. Arden Kaisman, a surgeon, as a witness at trial. *See* Dkt. No. 49. For the reasons set forth below, the Court denies Defendants' request for a "missing witness" charge regarding Dr. Kaisman.

## BACKGROUND

### A. Factual Background

The accident at issue occurred on June 3, 2022 on Lexington Avenue in Manhattan near the intersection of East 67th Street. *See* Dkt. No. 27-3 ¶ 1, 4; Dkt. No. 31, at 1. At the time of the accident, Du operated a commercial vehicle on behalf of his employer, and Kesler drove a box truck on behalf of his then-employer, Party Perfect. Dkt. No. 27-3 ¶ 1-2, 8; Dkt. No. 31, at 1-3;

Dkt. No. 27-7, at 48:19-49:23. At all relevant times, Kesler acted within the scope of his employment at Party Perfect. Dkt. No. 27-3 ¶ 1; Dkt. No. 31, at 1.

Lexington Avenue is a one-way street with two lanes for moving traffic and one bus lane. Dkt. No. 27-3 ¶ 3; Dkt. No. 31, at 1. On the date of the accident, Du was driving in the middle lane on Lexington Avenue, while Kesler was driving in the far-left lane behind two Party Perfect vehicles that were driving ahead of him in the left lane. Dkt. No. 27-3 ¶¶ 2-3; Dkt. No. 31, at 1; Dkt. No. 27-7, at 91:7-11.

At a certain point, while driving on Lexington Avenue, Kesler attempted to merge from the left lane into the middle lane where Du was driving, and in the process of doing so, Du and Kesler's trucks came into contact with each other. Dkt. No. 27-3 ¶ 4; Dkt. No. 31, at 2; Dkt. No. 27-7, at 88:3-18. According to Du, his vehicle was traveling between 15 and 20 miles per hour at the time of the first contact between the two vehicles. Dkt. No. 27-3 ¶ 7.

According to Du, Kesler attempted to merge into the middle lane without first ensuring that there was enough room to safely change lanes. *See* Dkt. No. 27-1 ¶ 4; Dkt. No. 27-4, at 16. Du further argues that the accident "occurred just past the intersection at East 67th Street." *See* Dkt. No. 27-1 ¶ 4.

Defendants, in contrast, contend that Kesler took several precautionary measures prior to merging, including turning his blinker on, looking in his rearview mirrors, stopping his truck, and signaling to Du that he was trying to merge into the middle lane by pointing to the right. Dkt. No. 27-7, at 88:3-89:21. Kesler testified that he looked at Du, lifted his right arm above his head, and Du shook his head. *See id*. Defendants claim that Du acknowledged Kesler's hand signal by nodding his head in approval and beginning to slow down. *Id.* at 101:12-17, 104:2-6, 105:20-25. Kesler then, believing he had enough room to merge, started to "creep out" into the middle lane

when Du suddenly increased his speed and drove up, resulting in the parties' trucks making contact with each other. *Id.* at 105:20-25, 107:10-15. Kesler claims that Du "went to top speed and came up to the lane [Kesler] was going to turn into" right before the crash occurred. *Id.* at 90:14-16.

As a result of the accident, Plaintiff claims that he suffered injuries to his left shoulder, cervical spine, and lumbar spine. Dkt. No. 37 at 2-3. As a result of those injuries, Plaintiff alleges that he underwent "conservative treatment of physical therapy, chiropractic care, and injections, as well as surgical treatment including a two-level lumbar spine discectomy and two-level cervical spine discectomy." *Id.* Defendants contend that Plaintiff's injuries were not caused by the accident. *See id.* at 3.

**B.     Relevant Procedural Background**

A jury trial is scheduled to commence on May 13, 2024.

Per the undersigned's Individual Practices and Rules,[1] as part of the parties' proposed joint pretrial order ("JPTO"), the parties were ordered to file:

> [a] statement by each party as to the witnesses whose testimony is to be offered in the party's case-in-chief, indicating whether such witnesses will testify in person or by deposition. The statement should also include a brief narrative of the expected testimony for each witness. Only listed witnesses will be permitted to testify except when prompt notice has been given and good cause shown.

Rule IX.A.7 of the Individual Practices and Rules of the Magistrate Judge Joseph A. Marutollo ("Judge Marutollo Rules"). The parties filed their JPTO on April 1, 2024. *See* Dkt. No. 37.

In the parties' JPTO (Dkt. No. 37), Plaintiff listed Dr. Kaisman as one of his anticipated witnesses.[2] Plaintiff described Dr. Kaisman's anticipated testimony as follows:

> This witness is expected to testify about plaintiff's medical treatment course including all imaging and surgical procedures as well as [*sic*] discuss how the accident caused plaintiff's subject injuries to his left shoulder, neck and back as

---

[1] The parties consented to magistrate judge jurisdiction in this action. *See* Dkt. No. 19.

[2] Defendants did not list Dr. Kaisman as one of their anticipated witnesses. *See* Dkt. No. 37.

3

well as a description of those body parts and injuries and associated symptoms related thereto.

Dkt. No. 37, at 5. Plaintiff also identified Dr. Mark Gladstein as an anticipated witness. Plaintiff described Dr. Gladstein's anticipated testimony as follows:

> This witness is expected to testify about plaintiff's medical treatment course including all imaging and surgical procedures as well as [*sic*] discuss how the accident caused plaintiff's subject injuries to his left shoulder, neck and back as well as a description of those body parts and injuries and associated symptoms related thereto.

*Id.*

Following a pre-trial conference, Plaintiff informed the Court that Dr. Kaisman will not testify at the upcoming trial. On April 24, 2024, Defendants filed a request for the Court to issue a proposed jury instruction related to Plaintiff's purported failure to produce Dr. Kaisman. *See* Dkt. No. 47. Defendants filed a letter explaining the basis for this proposed jury instruction on April 26, 2024, per the Court's order. *See* Dkt. No. 49. Plaintiff opposed the request on April 29, 2024. *See* Dkt. No. 50.

## LEGAL STANDARD

"It has not been determined in this Circuit whether a missing witness charge is governed by federal or state law." *Satnick v. Nat'l R.R. Passenger Corp.*, No. 03-CV-4896 (RKE), 2005 WL 236493, at *1 (S.D.N.Y. Feb. 1, 2005) (citing *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 432 (2nd Cir. 1999)). Nonetheless, because the standards for federal and New York State law are similar in this area, such a determination is unnecessary. *Id.* As the court set forth in *Satnick*,

> Second Circuit precedent "permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party." *United States v. Caccia*, 122 F.3d 136, 138 (2nd Cir. 1997). Under New York law, "it is well settled that a missing witness charge is warranted for the failure to call a treating physician as a

4

witness at trial, unless the party opposing the inference shows that the witness is either unavailable, not under his control, or that the witnesses' testimony would be cumulative." *Dayanim v. Unis*, 567 N.Y.S.2d, 673, 674 (1991).

*Satnick*, 2005 WL 236493, at *1.

"When 'a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction' and fails to produce such witnesses, the jury may infer that 'the testimony, if produced, would be unfavorable' to that party." *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) (quoting *Graves v. United States*, 150 U.S. 118, 121 (1893)). No instruction is necessary where the unpresented testimony would be merely cumulative. *See United States v. Tyers*, 487 F.2d 828, 831 (2d Cir. 1973), *cert. denied*, 416 U.S. 971 (1974).

Under New York law, the initial burden for a missing witness charge rests on the party requesting the charge. *See Royster v. Ercole*, No. 06-CV-12942 (SAS) (JCF), 2008 WL 542505, at *4 (S.D.N.Y. Feb. 29, 2008) (citing *People v. Gonzalez,* 68 N.Y.2d 424, 427 (1986)). "That party must demonstrate that the uncalled witness is knowledgeable about a material issue, that the witness would testify favorably to the opposing party, and that the opposing party has failed to call the witness to testify." *Royster*, 2008 WL 542505, at *4 (citation omitted). "If such a showing is made, the burden then shifts to the opposing party to demonstrate either "that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative [of] other evidence, that the witness is not 'available,' or that the witness is not under the party's 'control' such that the witness would not be expected to testify" in favor of the opposing party." *Id.*

"Both federal and New York State cases have held that no adverse inference results where an uncalled witness is equally available to both parties." *Satnick*, 2005 WL 236493, at *2 (citing *Longacre v. Yonkers R.R. Co.*, 236 N.Y. 119, 126 (1923); *Kean v. Comm'r,* 469 F.2d 1183, 1188

5

(9th Cir. 1972) ("Where a potential witness is equally available to both parties, no inference should be drawn from the failure of a party to call such witness.")). "This is not the case, however, where the witness is under the control of the other party." *Satnick*, 2005 WL 236493 at *2 (citing *United States v. Blakemore*, 489 F.2d 193, 195 (1973) ("[W]hether a person is to be regarded as peculiarly within the control of one party may depend as much on his relationship to that party as on his physical availability.")). "The availability of a witness is a separate and distinct consideration from control over that witness." *Royster*, 2008 WL 542505, at *4 (citation omitted). "'Availability' simply refers to the party's physical ability to produce the witness"; however, "if a witness, although theoretically 'available' to both sides, is favorable to or under the influence of one party and hostile to the other, the witness is said to be in the 'control' of the party to whom he is favorably disposed, and an unfavorable inference may be drawn from the failure to call the witness." *Id.* (citation omitted).

Ultimately, "[w]hether to call a particular witness is a tactical decision, as to which counsel is afforded wide latitude." *Warren v. Brunell*, No. 95-CV-6565L, 1997 WL 67828, at *4 (W.D.N.Y. Feb. 11, 1997) (citing *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986), *cert. denied*, 479 U.S. 836 (1986)).

## DISCUSSION

Defendants contend that the Court should give a model "missing witness" instruction, to wit:

> If it is peculiarly within the power of either [party] to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by you with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative.

Dkt. No. 49 (citing Federal Jury Practice and Instructions §14.15 (5th ed. 2001)).  Defendants argue that "given Plaintiff's stated intention not to call Dr. Kaisman, the jury should be permitted to draw an adverse inference against plaintiff since Dr. Kaisman's testimony would be material and he is peculiarly within plaintiff's control."  *Id.* (citing *Torres*, 845 F.2d at 1169).  Defendants add that "Dr. Kaisman is peculiarly within plaintiff's control because in comparison with plaintiff, defendants lack meaningful or pragmatic access to Dr. Kaisman."  *Id.*  "That is, Dr. Kaisman is under plaintiff's control because he would be expected to testify in plaintiff's favor and he is available."  Defendants add that "a missing witness charge may be given with respect to expert witnesses, and that the failure to call a treating physician is a proper predicate for the charge."  *Id.* (citing cases).

      Defendants, however, have not shown that a "missing witness" charge is appropriate here.  As Plaintiff points out, "any testimony by Dr. Kaisman would be cumulative and unnecessary" because Plaintiff is planning to call Dr. Mark Gladstein as a witness and medical expert at the upcoming trial.  Dkt. No. 50, at 1; *see Tyers*, 487 F.2d at 831 (affirming district court's denial of missing witness charge because the proposed testimony would have been cumulative).  Indeed, as noted above, Plaintiff proffers the exact same description for Dr. Kaisman and Dr. Gladstein in the parties' JPTO.  *See* Dkt. No. 37, at 5.

      Additionally, Plaintiff notes that Dr. Gladstein is Plaintiff's medical expert and the "primary provider treating Plaintiff for the injuries from the subject accident."  Dkt. No. 50, at 1.  As Plaintiff explains "Dr. Gladstein is the provider who recommended Plaintiff undergo the two surgical procedures which Dr. Kaisman performed under the umbrella of Dr. Gladstein's practice, Metropolitan Medical and Surgical PC."  *Id.*  And "because Dr. Gladstein treated [P]laintiff prior to the surgery, recommended Plaintiff undergo the two surgical procedures, and continued to treat

7

Plaintiff after the surgeries, he is in the best position to testify to Plaintiffs medical course and prognosis." *Id.* Significantly, Dr. Kaisman "only saw Plaintiff on *two* occasions, and on those occasions performed surgeries recommended by Plaintiffs treating provider for this accident, Dr. Gladstein." *Id.* at 1-2 (emphasis added).

Moreover, Plaintiff correctly notes that, under the undersigned's rules, "only listed witnesses will be permitted to testify except when prompt notice has been given and good cause shown." *See* Judge Marutollo Rule IX.A.7. Consequently, Plaintiff sought to be "expansive rather than inclusive" in creating his witness list. Plaintiff should not be punished for attempting to adhere to the Court's rules.

Finally, to the extent Defendants contend that Dr. Kaisman should have testified because he is a treating physician, nothing prevented Defendants from listing Dr. Kaisman as a potential witness on their portion of the JPTO. But they chose not to do so. Thus, Defendants cannot now argue that an adverse inference is necessary because Plaintiff has decided not to call Dr. Kaisman at trial.

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Court denies Defendants' request to issue a "missing witness" charge to the jury regarding Dr. Kaisman.

SO ORDERED.

Dated:   Brooklyn, New York
         April 30, 2024

   */s/ Joseph A. Marutollo*
   JOSEPH A. MARUTOLLO
   United States Magistrate Judge

8